Andrew G. Dietderich
Brian D. Glueckstein
Alexa J. Kranzley
Christian P. Jensen
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
Telephone:  (212) 558-4000
Facsimile:  (212) 558-3588

*Counsel to the Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| LSC COMMUNICATIONS, INC., *et al.*,[1] | Case No. 20-10950 (SHL) |
| Debtors. | Jointly Administered |

**ORDER (I) AUTHORIZING AND APPROVING THE DEBTORS'**
**ENTRY INTO THE PURCHASE AGREEMENT, (II) APPROVING THE SALE OF**
**CERTAIN OF THE DEBTORS' REAL PROPERTY FREE AND CLEAR OF LIENS,**
**CLAIMS, AND ENCUMBRANCES, (III) AUTHORIZING THE DEBTORS**
**TO TAKE ALL ACTIONS NECESSARY TO CONSUMMATE THE SALE, AND**
**(IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of LSC Communications, Inc. and its affiliated

debtors and debtors-in-possession (collectively, the "Debtors"), for entry of an order (this

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  LSC Communications, Inc. (9580); Courier Communications LLC (2268); Courier Kendallville, Inc. (4679); Courier New Media, Inc. (1312); Dover Publications, Inc. (0853); LSC Communications Logistics, LLC (9496); LSC Communications MM LLC (5577); LSC Communications US, LLC (4157); LSC International Holdings, Inc. (4995); National Publishing Company (8213); Publishers Press, LLC (7265); Continuum Management Company, LLC (2627); Clark Distribution Systems, Inc. (5778); Clark Holdings Inc. (9172); Clark Worldwide Transportation, Inc. (5773); The Clark Group, Inc. (6223); Courier Companies, Inc. (7588); Courier Publishing, Inc. (3681); F.T.C. Transport, Inc. (8699); LibreDigital, Inc. (7160); LSC Communications Printing Company (7012); and Research & Education Association, Inc. (3922). The Debtors' corporate headquarters is located at 191 N. Wacker Drive, Suite 1400, Chicago, IL 60606.

[2]   Capitalized terms not otherwise defined herein are to be given the meanings ascribed to them in the Motion.

"Order") (a) authorizing and approving the Debtors' entry into the Purchase Agreement,

(b) approving the sale of certain of the debtors' real property free and clear of liens, claims, and

encumbrances, (c) authorizing the Debtors to take all actions necessary to consummate the sale,

and (d) granting related relief; and upon consideration of the First Day Declaration and the King

Declaration; and this Court having jurisdiction to consider the Motion pursuant to 28 U.S.C.

§§ 157 and 1334; and venue of these Chapter 11 Cases and the Motion in this district being

proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant

to 28 U.S.C. § 157(b); and this Court having found that proper and adequate notice of the Motion

and the relief requested therein has been provided in accordance with the Bankruptcy Rules and

the Local Rules, and that, except as otherwise ordered herein, no other or further notice is

necessary; and any objections (if any) to the Motion having been withdrawn or overruled on the

merits; and a hearing on the Motion (the "Hearing") having been held on October 15, 2020 to

consider the relief requested in the Motion and upon the record of the Hearing and all of the

proceedings had before this Court; and this Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates, their creditors and all

other parties-in-interest; and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor,

**THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND
CONCLUSIONS OF LAW BASED ON THE PLEADINGS, THE REPRESENTATIONS**

SC1:5284368.2

**OF THE PARTIES, AND THE RECORD ESTABLISHED AND EVIDENCE PRESENTED AT THE HEARING**:[3]

      A.     <u>Jurisdiction and Venue; Final Order</u>.  The Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409 and this Court may issue a final order on the Motion consistent with Article III of the United States Constitution.

      B.     <u>Statutory Predicates</u>.  The statutory predicates for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code, rule 6004-1 of the Local Rules and the Sale Guidelines.

      C.     <u>Notice</u>.  As shown by the certificates of service filed with the Court and the representations or proffers made on the record at the Hearing, (i) proper, timely, adequate, due and sufficient notice of the Motion, the Hearing and the Purchase Agreement has been provided in accordance with section 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004 and Local Rule 6004-1 and the procedural due process requirements of the United States Constitution to all persons and entities entitled to such notice, (ii) such notice was adequate and sufficient under the circumstances of the chapter 11 cases, and (iii) no other or further notice of the Motion, Hearing or Purchase Agreement is or shall be required.

      D.     <u>Opportunity to Object</u>.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities, including (a) counsel to Bank of America, N.A., as administrative agent and collateral agent for

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact to the fullest extent of the law.  *See* Fed. R. Bankr. P. 7052.

SC1:5284368.2

the term loan lenders and revolving credit lenders under the Credit Agreement, dated as of

September 30, 2016, as amended, supplemented or otherwise modified as of the date hereof;

(b) counsel to Wells Fargo, N.A., as trustee and collateral agent, or to any successor trustee and

collateral agent, under the Indenture, dated as of September 30, 2016, as amended, supplemented

or otherwise modified as of the date hereof; (c) counsel to Bank of America, N.A., as

administrative agent for the DIP Facility; (d) counsel to the ad hoc group of term lenders; (e)

counsel to the ad hoc group of secured noteholders; (f) counsel to the Official Committee of

Unsecured Creditors; (g) the U.S. Trustee; (h) all persons and entities known by the Debtors to

have expressed a credible interest to the Debtors in acquiring the Property in the last twelve

months; (i) all persons and entities known by the Debtors to have asserted any lien, claim,

interest, or encumbrance on the Property; and (k) any other party that has requested notice

pursuant to Bankruptcy Rule 2002.

   E. <u>Arms-Length Sale; Good Faith Purchaser</u>.  The Purchaser is not an

"insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  The

Sale has been undertaken by the Purchaser and the Debtors at arm's length, without collusion, in

good faith and for value.  The Purchaser is a good faith buyer within the meaning of section

363(m) of the Bankruptcy Code and is entitled to the protections of section 363(m) of the

Bankruptcy Code.  None of the Debtors or the Purchaser have engaged in any conduct that

would cause or permit the Purchase Agreement or the consummation of the Sale to be avoided,

or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code.

   F. <u>Corporate Authority</u>.  The Debtors and the Purchaser (i) have full

corporate power to execute the Purchase Agreement and any agreements or documents related

- 4 -

thereto or contemplated thereby, (ii) have all of the corporate power and authority necessary to

consummate the Sale, (iii) have taken all corporate action necessary to authorize and approve the

Purchase Agreement and any agreements or documents related thereto or contemplated thereby

and the Sale, and (iv) no consents or approvals, other than those expressly provided for in the

Purchase Agreement and any agreements or documents related thereto or contemplated thereby,

are required to consummate the Sale.

G.    Sale in Best Interests.  Good and sufficient reasons for approval of the

Purchase Agreement and the Sale have been articulated, and the relief requested in the Motion is

in the best interests of the Debtors, their estates, their creditors and other parties-in-interest.

H.    Business Justification.  The Debtors have demonstrated both (i) good,

sufficient and sound business justification for the Court to enter this Order, which such good,

sufficient and sound business justification was set forth in the Motion and on the record at the

Hearing, and are incorporated herein by reference, and (ii) compelling circumstances for the sale

of the Property outside of the ordinary course of business pursuant to section 363(b) of the

Bankruptcy Code before, and outside of, a plan of reorganization in that, among other things, the

immediate approval by the Court of the Sale is necessary and appropriate to maximize the value

of the Debtors' estates.

I.    Fair Value Transactions.  The Purchase Agreement represents a fair and

reasonable offer to purchase the Property under the facts and circumstances of these chapter 11

cases, and the form and total consideration to be realized by the Debtors pursuant to the Purchase

Agreement constitute a transfer of the Property at fair market value.  The Purchase Price

represents the best offer received by the Debtors under the circumstances, after the Debtors

- 5 -

conducted a marketing process designed to maximize the sale price of the Property and that

yielded numerous offers for the Property.  Approval of the Purchase Agreement and the

consummation of the transactions contemplated thereby is in the best interests of the Debtors,

their creditors, their estates, and all other parties-in-interest.

       J.   <u>Satisfaction of Section 363(f) Standards</u>.  The Property constitutes

property of the Debtors' estates and title thereto is currently vested in the Debtors' estates within

the meaning of section 541(a) of the Bankruptcy Code.  The Debtors may sell the Property free

and clear of any interests in such Property of any kind or nature whatsoever because in each case

one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been

satisfied.  The person or entity with any interest in the Property: (i) has, subject to the terms and

conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii)

could be compelled in a legal or equitable proceeding to accept money satisfaction of such

interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.

Those holders of interests who did not object to the Motion are deemed, subject to the terms of

this Order, to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.

       K.   The legal and factual bases set forth in the Motion establish just cause

for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and

their estates, creditors, interest holders and all other parties-in-interest.

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is GRANTED as set forth herein.

2.    <u>Valid Transfer</u>.  At the respective closings of each of the Sale, all of the

Debtors' right, title and interest in and to, and possession of, the Property, as applicable, shall be

immediately vested in the Purchaser, as applicable, pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code.  Such transfer shall constitute a legal, valid, binding, and effective transfer with respect to the Property.

3.     Authorization and Approval of the Debtors' Entry into the Purchase Agreement.  In accordance with section 363 of the Bankruptcy Code, Bankruptcy Rule 6004, Local Rule 6004-1 and the Sales Guidelines, the Debtors are (a) authorized to sell the Property to the Purchaser in accordance with the terms and conditions set forth in the Purchase Agreement, attached hereto as Schedule 1.  The Purchase Agreement, together with all annexes and exhibits thereto, are hereby approved.

4.     Consummation of the Sale.  The Debtors are authorized and empowered to take any and all actions necessary or appropriate to:  (a) consummate the Sale to the Purchaser pursuant to and in accordance with the terms and conditions of the Purchase Agreement; (b) close the Sale as contemplated in the Purchase Agreement and this Order; and (c) execute and deliver, perform under, consummate, implement, and close fully the Purchase Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement and such other ancillary documents; provided that, such additional documents do not materially change the terms of the Purchase Agreement.

5.     DIP Order.  If still applicable, any proceeds obtained by the Debtors pursuant to the Sale or any authorization contained hereunder shall be subject to any applicable

SC1:5284368.2

requirements imposed on the Debtors under the *Final Order: (I) Authorizing the Debtors to Obtain Senior Secured Superpriority Postpetition Financing, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Authorizing the Use of Cash Collateral, (IV) Granting Adequate Protection, (V) Modifying the Automatic Stay and (VI) Granting Related Relief* [D.I. 321] (the "DIP Order") and the DIP Documents (as defined in the DIP Order).

6.    Transfer of the Property.    The Debtors are authorized to sell the Property free and clear of all liens, claims, encumbrances and interests against the Debtors or their estates. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale of the Property under the terms and conditions set forth in the Purchase Agreement shall be free and clear of any and all liens, claims, encumbrances, and other interests of any kind or nature whatsoever. Any such interests shall be transferred and attached to the proceeds of the Sale with the same validity and priority, and subject to the same defenses that such liens had against the Property immediately prior to the closing. All persons and entities holding liens or interests in the Property arising under, out of, in connection with, or in any way relating to the Debtors, the Property or the transfer of the Property to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against the Purchaser or their successors or assigns, their property or the Property, such persons' or entities' liens or interests in and to the Property.

7.    No Further Liability.    Notwithstanding any provision of the Purchase Agreement to the contrary, after the closing of the Sale, the Debtors shall have no further liability with respect to the Property, and any claims, whether administrative or otherwise, relating to or arising from the Property after the closing of the Sale asserted against the Debtors shall be deemed disallowed.

- 8 -

8.    <u>No Assumed Liabilities</u>.  Except as expressly set forth in the Purchase

Agreement or this Order, the Purchaser shall not be liable or obligated, or assume or in any way

be responsible for, any liabilities or obligations of the Debtors or their estates (whether direct or

indirect, liquidated or unliquidated, choate or inchoate, or contingent or fixed) arising before or

after the consummation of the Sale.  For avoidance of doubt, the assumption by the Purchaser of

any liabilities or obligations pursuant to the Purchase Agreement or this Order in accordance

with the foregoing sentence are assumed with any and all defenses or claims of the Debtors to

the payment or performance of such liabilities or obligations.

9.    <u>Authorization to Release Encumbrances</u>.  If any person or entity which has

filed statements or other documents or agreements evidencing liens on, or interests in, the

Property shall not have delivered to the Debtors prior to the closing in proper form for filing and

executed by the appropriate parties, termination statements, instruments of satisfaction, releases

of liens and easements, and any other documents necessary for the purpose of documenting the

release of liens or interests which the person or entity has or may assert with respect to the

Property, the Debtors are hereby authorized and directed, and the Purchaser is hereby authorized

to execute and file such statements, instruments, releases, and other documents on behalf of such

person or entity with respect to the Property.  A certified copy of this Order may be filed with the

appropriate clerk and/or recorded with the recorder to act to cancel any of the liens and other

encumbrances of record.  Notwithstanding the foregoing, the provisions of this Order authorizing

the Sale and transfer of the Property free and clear of liens, claims, and encumbrances against the

Debtors or their estates, shall be self-executing, and notwithstanding the failure of the Purchaser,

the Debtors, or any other party to execute, file, or obtain releases, deeds of cancelation of

SC1:5284368.2

mortgage, termination statements, assignment consents, or other deeds and instruments to effectuate, consummate, and/or implement the provisions hereof and the Purchase Agreement with respect to the sale of the Property all liens, claims, and encumbrances on the Property shall be and hereby are deemed to be divested, canceled, terminated, and discharged.

10.     <u>Order Binding on Recording Officers</u>.  This Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement and to cancel, terminate and release liens, claims, and encumbrances on the Property.

11.     <u>Other Agreements</u>.  The failure specifically to include any particular provision of the Purchase Agreement in this Order shall not diminish or impair the effectiveness of such provision

12.     <u>Modification of the Purchase Agreements</u>.  The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have

- 10 -

a material adverse effect on the Debtors' estates or the rights of any party holding a lien, claim or encumbrance on or against the Property.

13.     Time Periods.  All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

14.     Priority of the Order.  To the extent there is any inconsistency between the terms of the Purchase Agreement, the Motion, and this Order, the terms of this Order shall govern.

15.     Reservation of Rights.  Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order shall be deemed: (a) an admission as to the validity, priority or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party-in-interest's right to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume any agreement, contract or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors or any other party in interest that any liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Order are valid and the Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity or perfection or to seek avoidance of all such liens. Any payment made pursuant to this Order should not be construed as an admission as to the validity, priority or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

- 11 -

16.     <u>Additional Authorization</u>.  The Debtors are authorized to take all actions necessary to effectuate the relief granted in the Order in accordance with the Motion.

17.     <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the Motion or the implementation of this Order.

18.     <u>No Modification</u>.  Nothing in this Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any liability to a governmental unit under police and regulatory statutes or regulations (including but not limited to  environmental laws or regulations), and any associated liabilities for penalties, damages, cost recovery, or injunctive relief that any entity would be subject to as the owner, lessor, lessee, or operator of the Property after the date of entry of this Order.  Nothing contained in this Order or in the Purchase Agreement shall in any way diminish the obligation of any entity, including the Debtors, to comply with environmental laws.  Nothing in this Order or the Purchase Agreement authorizes the transfer to the Purchaser of any licenses, permits, registrations, or governmental authorizations and approvals without the Purchaser's compliance with all applicable legal requirements under non-bankruptcy law governing such transfers.

19.     <u>Binding Order</u>.  This Order shall be binding upon the Purchaser and all successors and assigns of the Purchaser, the Debtors, their estate, all creditors of and holders of equity interests in the Debtors, and any holders of liens against or on all or any portion of the Property.  This Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser, and their respective successors and assigns.

- 12 -

Dated: October 20, 2020
      New York, New York

                */s/ Sean H. Lane*
                The Honorable Sean H. Lane
                United States Bankruptcy Judge

- 13 -

## **Schedule 1**

**Purchase Agreement**

SC1:5284368.2

*Execution Version*

## REAL ESTATE PURCHASE AND SALE AGREEMENT

THIS REAL ESTATE PURCHASE AND SALE AGREEMENT (this "**Agreement**") is made as of the 24th day of September, 2020 (the "**Effective Date**"), by and between LSC Communications US, LLC, a Delaware limited liability company ("**Seller**"), and Avenue 55, LLC, a Washington limited liability company ("**Purchaser**").

### RECITALS

A.     Seller owns certain land within the City of Reno, County of Washoe, and State of Nevada, as more fully described in <u>Exhibit A</u> attached hereto and commonly known as 14100 Lear Boulevard (such land, together with all buildings, fixtures, appurtenances and easements thereon and thereto, including any associated mineral and water rights, being collectively referred to herein as the "**Property**").

B.     Seller has filed a voluntary petition for relief under Chapter 11 of Title 11 (the "**Bankruptcy Case**") of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

C.     Seller wishes to sell, and Purchaser wishes to purchase, all of Seller's right, title and interest in and to the Property, on the terms, conditions and provisions set forth in this Agreement (collectively, the "**Transaction**").

D.     On the terms and subject to the conditions set forth herein, Seller intends to request that the Bankruptcy Court authorize and approve the Transaction pursuant to the Approval Order (as defined below), pursuant to, *inter alia*, Sections 105 and 363 of the Bankruptcy Code, and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure, which Approval Order will include the authorization for the Transaction in accordance with Section 363 of the Bankruptcy Code, in a manner and subject to the terms and conditions set forth in this Agreement and the Approval Order and in accordance with other applicable provisions of the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, the local rules for the Bankruptcy Court and the sale guidelines for the conduct of asset sales adopted by the Bankruptcy Court (the date of the Bankruptcy Court's entry of the Approval Order being referred to herein as the "**Approval Date**").

### AGREEMENT

NOW, THEREFORE, in consideration of the Recitals which are a substantive part of this Agreement and the mutual promises set forth in this Agreement, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged by each party, Seller and Purchaser agree as follows:

1.     <u>Agreement to Sell</u>.  Purchaser agrees to purchase from Seller, and Seller agrees to sell to Purchaser, all of Seller's right, title and interest in and to the Property upon the terms, conditions and provisions set forth in this Agreement.

2.    Purchase Price.  Subject to the prorations and adjustments as provided herein, the purchase price for the Property shall be equal to THIRTY TWO MILLION FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($32,500,000.00) (the "**Purchase Price**").  Purchaser shall pay the Purchase Price to Seller as follows:

(a)    Within three (3) business days after the Effective Date, an original duly executed promissory note in the form attached hereto as Exhibit B from Purchaser in favor of Seller in the amount of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) (the "**Deposit**") shall be deposited with and held in escrow by Ticor Title of Nevada (the "**Title Insurer**") as earnest money.  Purchaser shall simultaneously provide a copy of such promissory note to Seller.  Within one (1) business day after the expiration of the Feasibility Review Period, the Deposit shall be converted to immediately available funds, and Purchaser shall deposit such funds with Title Insurer in a non-interest bearing escrow account (the "**Escrow Account**");

(b)    The balance of the Purchase Price, plus or minus the prorations authorized by this Agreement, shall be delivered to Seller at the Closing (as defined below) in immediately available funds.

3.    Title; Survey; Review Period.

(a)    Title Commitment.  On or before the Approval Date, Seller shall deliver to Purchaser a commitment for an ALTA Owner's Form policy of title insurance (the "**Commitment**").  The Commitment shall be (i) in the amount of the Purchase Price, (ii) dated as of the most recent date available from the Title Insurer, (iii) issued by the Title Insurer, and (iv) show fee simple title to the Property in Seller.  Seller shall also request that the Title Insurer provide copies of all title exceptions shown or referenced in the Commitment (the "**Underlying Documents**"). The cost of the Commitment shall be borne by Seller.

(b)    Survey.  Within thirty (30) days after the Approval Date, Purchaser shall have the right (but the obligation) to obtain, at Purchaser's sole cost, a survey of the Property in accordance with Minimum Standard Detail Requirements for ALTA/NSPS Land Title Survey Standards jointly established and adopted by ALTA and NSPS in 2016, prepared by a surveyor licensed by the State of Nevada and certified to Purchaser, Title Insurer, and such additional persons or entities as Purchaser may request (the "**Survey**").

(c)    Title and Survey Review.  Purchaser shall have fifteen (15) days from receipt of the Commitment and Survey (the "**Title Review Period**") to review such items. If, within the Title Review Period, Purchaser serves written notice (the "**Title Notice**") on Seller that the Commitment or Survey contains any matter, exception or exceptions, other than the Permitted Exceptions, which are not acceptable to Purchaser (the "**Unpermitted Exceptions**"), then Seller shall have ten (10) days after the date of such notice (the "**Cure Period**"), to cure such defects by (x) causing the Title Insurer and surveyor, as applicable, to remove such Unpermitted Exceptions from the Commitment and Survey, as applicable, or (y) causing the Title Insurer to agree to provide at Closing an affirmative endorsement to the Title Policy (as defined below) insuring Purchaser over the effect of such

Unpermitted Exceptions. Seller shall notify Purchaser in writing within five (5) days after receipt of the Title Notice (the "**Response Period**") whether Seller elects to cure the same. All exceptions not objected to in the Title Notice as being Unpermitted Exceptions are hereinafter referred to as "Permitted Exceptions" in addition to those matters defined as Permitted Exceptions in Section 4 below. Notwithstanding the foregoing, Purchaser disapproves, and Seller shall be required to remove (or cause to be insured over by endorsement), any and all monetary liens filed or recorded against the Property due to or related to Seller (such as mortgages, deeds of trust, judgment liens, or construction liens) (collectively, the "**Monetary Liens**"), except to the extent that such Monetary Liens may be automatically removed by operation of the Approval Order.

(i)    If Seller is unable or unwilling to cause any or all of the Unpermitted Exceptions to be removed or insured over by endorsement as described above, Purchaser shall have the right to:

(1)    terminate this Agreement by sending written notice of such termination to Seller within five (5) days after the expiration of the Cure Period (i.e., on or before the expiration of the Feasibility Review Period, as hereinafter defined, except as may otherwise result pursuant to the last paragraph of Section 3(c)), in which event the Deposit shall be returned to Purchaser promptly as Purchaser's sole and exclusive remedy, and thereafter neither Seller nor Purchaser shall have any further obligations under this Agreement except as explicitly stated herein; or

(2)    waive its objection to such Unpermitted Exceptions and accept title to the Property subject thereto, in which case such Unpermitted Exceptions shall be deemed Permitted Exceptions, and Purchaser shall have no further rights against Seller with respect to such exceptions.

(ii)    If Purchaser has not delivered the Title Notice to Seller by the expiration of the Title Review Period Purchaser shall be deemed to have disapproved title to the Property and terminated this Agreement. In addition, if Purchaser does not notify Seller that Purchaser has elected to terminate this Agreement as permitted in Section 3(c)(i)(1) within the five (5) day period described in Section 3(c)(i)(1), Purchaser shall be deemed to have terminated this Agreement.

Seller and Purchaser shall have an ongoing right to update the Title Commitment and shall provide to the other party copies of the Underlying Documents corresponding to any new matters shown in an updated Title Commitment. In the event any such new matters appear on the updated Title Commitment or in the proforma Title Policy after the Title Review Period and prior to the Closing that are not Permitted Exceptions and would materially adversely affect the Property in Purchaser's sole but reasonable determination, such new matters shall be deemed Unpermitted Exceptions and the foregoing title objection and cure procedures shall apply with respect to same, except that (I) the Title Review Period shall be five (5) business days, (II) the Cure Period shall be four (4) business days, (III) the Response Period shall be three (3) business days, and (IV) the

Closing Date shall be extended on a day-for-day basis as necessary to allow for the foregoing time periods.

4.    <u>Seller's Due Diligence Materials</u>.  On or before the Approval Date, Seller shall deliver to Purchaser the following (to the extent they are in Seller's possession) which shall be referred to collectively herein as "**Seller's Due Diligence Materials**": (i) a copy of any and all existing environmental reports related to the Property, including soil reports, (ii) copies of all maintenance reports related to the Property, (iii) copies of any construction and building plans and specifications, (iv) copies of any leases, and (v) a copy of any notice from any governmental authority related to the Property, provided that Seller shall not be responsible for the content or accuracy of Seller's Due Diligence Materials, and Purchaser waives any and all claims against Seller with respect to accuracy or validity of any information contained in Seller's Due Diligence Materials.  The foregoing provisions of this Section 4 shall not be deemed any type of representation, either express or implied, that any of the due diligence materials referenced above are in Seller's possession and/or easily accessible.

5.    <u>Conveyance</u>.  Seller shall convey, or cause to be conveyed, to Purchaser title to the Property by grant, bargain and sale deed in substantially the form attached hereto as <u>Exhibit C</u> and as otherwise reasonably agreed upon by Seller and Purchaser (the "**Deed**"), and subject to the following permitted exceptions (the "**Permitted Exceptions**"):

(a)    General real estate taxes and any and all special taxes or assessments which are a lien but not yet due and payable;

(b)    Acts done or suffered by and judgments against Purchaser and any parties claiming by, through or under Purchaser;

(c)    Intentionally deleted;

(d)    Dedicated roads and highways, and property condemned or taken by eminent domain, if any and rights of the public, the State of Nevada and the municipality in and to that part of the land, if any, taken or used for road purposes;

(e)    All building, zoning, and applicable laws, ordinances and regulations of governmental authorities having jurisdiction over the Property, provided that this shall not include any notices of violation filed against the Property;

(f)    Intentionally deleted;

(g)    Intentionally deleted;

(h)    Intentionally deleted;

(i)    Intentionally deleted; and

(j)    All exceptions in the Commitment or Survey deemed Permitted Exceptions in accordance with Section 3 above.

6.    <u>Purchaser's Feasibility Review</u>.   Subject to the provisions of Section 7 below, Purchaser shall have sixty (60) days from the Approval Date (the "**Feasibility Review Period**") to conduct a physical inspection of the Property and perform such examinations and inspections reasonably necessary to ascertain whether the condition of the Property (including the environmental condition) is acceptable to Purchaser in its sole and absolute discretion (the "**Feasibility Review**").   Notwithstanding anything to the contrary herein, the Feasibility Review Period shall automatically be extended to five (5) business days beyond the date that the Approval Order becomes a final, non-appealable order.  Purchaser shall have the right, for any reason or no reason, to terminate this Agreement by sending written notice of such termination to Seller on or before the expiration of the Feasibility Review Period, in which event the Deposit shall be returned to Purchaser promptly as Purchaser's sole and exclusive remedy and thereafter neither Seller nor Purchaser shall have any further obligations under this Agreement except as explicitly stated herein.  If Purchaser does not so terminate this Agreement prior to the expiration of the Feasibility Review Period, then Purchaser conclusively shall be deemed to have elected to terminate this Agreement pursuant to this Section 6.

7.    <u>Purchaser's Right of Entry</u>.

(a)    Seller shall permit Purchaser and its authorized employees, agents, engineers and other representatives to enter upon the Property during regular business hours to conduct the Feasibility Review in accordance with Section 6.  This right of entry shall be conditioned upon (i) Seller, or a representative or agent designated by Seller, having the right to be present on the Property with Purchaser or its representatives at the time or times that Purchaser is on or about the Property, (ii) Purchaser complying with Seller's security requirements, and (iii) Purchaser not unreasonably interfering with Seller's business operations, if any, at the Property.  Purchaser shall make appropriate arrangements with Seller for access in each instance and shall give Seller not less than one (1) business day's prior notice of the dates and times at which Purchaser desires to enter the Property.

(b)    Except as otherwise authorized in writing by Seller, Purchaser shall have no right to alter the Property in any way or to damage the Property in any respect in connection with its inspections.  Purchaser shall restore any portion of the Property affected by such inspections to its original condition, at Purchaser's sole expense.  In the event Purchaser takes any soil borings after first obtaining Seller's consent pursuant to Section 7(g) below, the holes shall be filled and the surface restored after the conclusion of such tests.  Purchaser hereby agrees to indemnify and hold Seller absolutely harmless from and against any and all claims, demands, actions, suits, judgments, liabilities, costs and expenses, including reasonable attorneys' fees (such fees also to include those in connection with all post-judgment and appellate proceedings), for injury to persons and physical damage to property related to or arising from, directly or indirectly, Purchaser's entry upon the Property and the performance (by Purchaser or its duly authorized employees, agents, engineers or other representatives) of the Feasibility Review, including without limitation any lien asserted against the Property arising as a result of any such inspections or tests made by or at the direction of Purchaser. Notwithstanding anything to the contrary set forth herein, Purchaser shall not be responsible in any way for anything related to the discovery of preexisting conditions on, in or under the Property (except to the extent such preexisting

- 5 -

conditions are exacerbated by Purchaser or its agents). The obligations of this subsection (b) shall survive the termination of this Agreement or the Closing.

(c)  Purchaser and its employees, agents, engineers and other representatives agree to keep the terms and conditions contained in this Agreement and the results of the Feasibility Review, together with any other information obtained from Seller or third parties about the Property (collectively, the "**Confidential Information**"), strictly confidential and shall not disclose the Confidential Information to any third party other than the independent contractors, consultants, lenders, engineers, employees and attorneys of Purchaser who are involved in the substantive evaluation of the Property on behalf of Purchaser (provided that Purchaser shall impose on all such third parties the same confidentiality obligations set forth herein) and except as otherwise required by law, and if required by law, Purchaser shall give Seller prompt written notice thereof. Notwithstanding the foregoing, Confidential Information shall not include any information which (i) is or becomes generally available to the public other than as a result of a breach of this Agreement by Purchaser or any of its Consultants (as defined below), (ii) Purchaser or any of its Consultants is required to disclose upon the advice of legal counsel pursuant to court proceedings, provided that Purchaser shall provide prompt notice to Seller of such requirement in order to enable Seller to seek an appropriate protective order or other remedy and/or (iii) is available in governmental records that are generally available to the public.  Purchaser and such third parties shall not use the Confidential Information other than in connection with their examination of the Property.  If the Transaction contemplated by this Agreement is not consummated, Purchaser shall deliver (or cause to be delivered) all such documentation to Seller, or at Seller's request, Purchaser shall destroy (or cause to be destroyed) all documentation related to the Feasibility Review.

(d)  In view of the difficulties of placing a monetary value on the Confidential Information, it is agreed and understood that in the event of any breach or threatened breach of this Section 7 by Purchaser, its employees, agents, engineers and other representatives or any third parties under the control of Purchaser, Seller shall be entitled to injunctive and other equitable relief in any court of competent jurisdiction, and, in the event of a willful or intentional breach hereof by Purchaser or by any person employed by or working as an agent of Purchaser in any manner, Seller shall be entitled to recover its direct damages attributable to such breach (including reasonable attorneys' fees through all post-judgment and appellate proceedings), but not including consequential, special or punitive damages.

(e)  Purchaser at its sole expense, shall obtain and maintain prior to entering the Property, and shall cause any of its agents, engineers and other representatives ("**Consultants**") to obtain and maintain prior to entering the Property, from a financially sound insurance company or companies reasonably acceptable to Seller, policies of insurance for the following types of coverage and with limits of liability not less than the minimum amounts set forth below.

(i)  with respect to any employees, workers' compensation insurance, where legally required, with statutory limits; and

(ii)    commercial general liability ("**CGL**") insurance with limits of not less than $1,000,000 combined single limit, which may be arranged through a combination of primary and excess policies if necessary, for claims of bodily injury and/or property damage, written on an "occurrence" basis and including coverage for personal injury liability, products and completed operations, independent contractors, blanket broad form contractual liability, and explosion, collapse, and underground hazards.

(f)    Prior to entering the Property, Purchaser or the Consultants, whichever of them is then entering the Property, shall provide Seller with certificate(s) of insurance evidencing that the foregoing policies of insurance have been obtained and are in full force and effect and that Seller has been named an additional insured under said CGL policies. Said certificate(s) shall also show the expiration date of each policy and provide that Seller shall be given at least ten (10) days' prior written notice of any cancellation or material modification thereof. Neither the purchase of any policy of insurance nor the furnishing of evidence thereof to Seller pursuant hereto shall relieve Purchaser of its indemnification obligations hereunder provided in Section 7(b).

(g)    Notwithstanding anything to the contrary contained in this Agreement, Purchaser shall conduct no surface or subsurface invasive testing or sampling of the Property ("**Invasive Testing**") without Seller's prior approval, which shall not be unreasonably withheld or delayed so long as Purchaser has (i) afforded Seller the opportunity to review the written scope of work for the Invasive Testing at least five (5) business days in advance and (ii) provided Seller with copies of certificates of insurance evidencing insurance policies that are maintained by Purchaser and by any Consultants or other third parties engaged by Purchaser in connection with Purchaser's and such Consultants' and third parties' Invasive Testing, with limits, coverages and insurers as described in Section 7(e) above or as may be otherwise be reasonably required by Seller in consultation with Purchaser.

8.    Seller's Covenants. During the Feasibility Period and prior to the Closing, Seller shall cooperate at Purchaser's sole cost and expense in Purchaser's applications for entitlements, subdivision, boundary line adjustments or other actions for the purpose of enabling Purchaser to develop the Property after the Closing for commercial and industrial uses, provided that the effectiveness of all such actions taken by Purchaser prior to the Closing shall be expressly contingent on the occurrence of the Closing in accordance with this Agreement.

9.    Closing. Subject to the Bankruptcy Court's entry of the Approval Order, the closing of the Transaction contemplated hereby ("**Closing**") shall be through an escrow (the "**Closing Escrow**") established with the Title Insurer as escrowee. The Closing Escrow instructions shall be in the form customarily used by the Title Insurer with respect to deed and money escrows, with such special provisions as may be required (i) to conform to the provisions of this Agreement, and (ii) if available, to provide for immediate disbursement of funds to Seller upon the delivery of the Title Policy to Purchaser (an "**Escrow Style**" closing). Seller hereby agrees to provide such undertakings ("**Gap Undertakings**") as may be required by the Title Insurer for the Closing and issuance of the Title Policy. The Closing Escrow shall be auxiliary to this Agreement, and this Agreement shall not be merged into, nor in any manner superseded by, the Closing Escrow. The

- 7 -

Closing Escrow costs and fees, including any fee for the Escrow Style closing, shall be equally divided between Purchaser and Seller.

10.    <u>Closing Date</u>.  Closing shall be held at such time as shall be mutually agreeable to the parties hereto on a date (the "**Closing Date**") that is on or before thirty (30) days after the later of (a) the expiration of the Feasibility Review Period and (b) the Bankruptcy Court's entry of the Approval Order.

11.    <u>Title Policy</u>.  Seller shall cause the Title Insurer to issue, or be irrevocably committed to issue, to Purchaser an ALTA Owner's title policy to Purchaser at Closing, subject only to the Permitted Exceptions and in the amount of the Purchase Price (the "**Title Policy**"), and Seller shall pay the portion of the premium for the Title Policy that is allocable to standard coverage. Purchaser shall have the right to request an ALTA extended coverage Owner's Title Policy and any endorsements thereto at its sole cost and expense.

12.    <u>Closing Adjustments</u>. All installments of assessments and utility charges which are due and payable as of Closing shall be paid by Seller.  General and special real estate taxes, utilities charges and installments of assessments not due and payable as of the Closing (the "**Proratable Items**") shall be prorated and adjusted ratably between Seller and Purchaser as of Closing.  If the amount of any Proratable Item is not ascertainable at Closing, the adjustment thereof shall be on the basis of the most recently ascertainable bill therefor.  Such prorations are to be the final allocation between the parties and are not to be readjusted.

13.    <u>Seller's Closing Deliveries and Closing Conditions</u>.

(a)    On or prior to the Closing Date, Seller shall deposit the following into the Closing Escrow:

(i)    The Deed subject only to the Permitted Exceptions;

(ii)    Seller's executed affidavit as required by the Foreign Investments in Real Property Transfer Act;

(iii)    Seller's executed ALTA statement, Owner's Affidavit or similar statement which may be required by the Title Insurer;

(iv)    Seller's executed Gap Undertakings or equivalent which may be required by the Title Insurer;

(v)    Seller's executed counterpart of the bill of sale with respect to the FF&E (as defined below) located on the Property at the time of Closing (the "**Bill of Sale**"), which Bill of Sale shall be "as-is" with no representations or warranties whatsoever;

(vi)    All keys and all other items necessary to access the Property or items thereon;

(vii)    Seller's executed counterpart of any applicable state, county or local realty transfer tax declarations;

(viii)    Seller's executed counterpart of an agreed proration statement and settlement statement; and

(ix)    Such other documents, instruments, certifications and confirmations as may be reasonably required and designated by the Title Insurer to fully effect and consummate the Transaction contemplated hereby.

(b)    Seller's obligation to convey title to the Property to Purchaser shall be subject to satisfaction by Purchaser (or written waiver by Seller) of the following conditions precedent on and as of the Closing Date:

(i)    Purchaser shall have deposited into the Closing Escrow the items described in Section 14(a);

(ii)    Purchaser shall not be in default of any covenant to be performed by Purchaser under this Agreement;

(iii)    The representations and warranties of Purchaser contained in this Agreement shall be true and correct as of the Closing Date as if such representations and warranties were made as of the Closing Date;

(iv)    No ruling, order or injunction of any court or administrative agency of competent jurisdiction (including by the Bankruptcy Court in the Bankruptcy Case) or applicable law or regulation promulgated by any governmental authority of competent jurisdiction shall be in effect which restrains or prohibits, nor any action, suit or proceeding shall be pending which seeks to restrain or prohibit, the consummation of the Transaction contemplated by this Agreement; and

(v)    the Bankruptcy Court shall have entered the Approval Order and the Approval Order shall not be subject to a stay or have been vacated or revoked.

If all of the above conditions have not been satisfied by Purchaser or waived in writing by Seller on or prior to the Closing Date, then Seller shall have the right to terminate this Agreement, and upon such termination the Deposit shall be returned to Purchaser and neither Purchaser nor Seller shall have any further rights, obligations or liabilities hereunder, except as otherwise set forth herein.  If the failure of any condition precedent to Seller's obligations set forth in this Section 13 arises as a result of a default by Purchaser under this Agreement, Seller shall have the remedies available to Seller in Section 16(b).

14.    <u>Purchaser's Closing Deliveries and Closing Conditions</u>.

(a)    On or prior to the Closing Date, Purchaser shall deposit the following into the Closing Escrow:

(i)       The balance of the Purchase Price, by wire transfer of immediately available funds;

(ii)      Purchaser's executed counterpart of the Bill of Sale;

(iii)     Purchaser's executed counterpart of any applicable state, county or local realty transfer tax declarations;

(iv)     Purchaser's executed counterpart of an agreed proration statement and settlement statement; and

(v)      Such other documents, instruments, certifications and confirmations as may be reasonably required and designated by the Title Insurer to fully effect and consummate the Transaction contemplated hereby.

(b)       Purchaser's obligation to accept title to the Property from Seller shall be subject to satisfaction by Seller (or written waiver by Purchaser) of the following conditions precedent on and as of the Closing Date:

(i)       The representations and warranties of Seller contained in this Agreement shall be true and correct as of the Closing Date as if such representations and warranties were made as of the Closing Date;

(ii)      No ruling, order or injunction of any court or administrative agency of competent jurisdiction (including by the Bankruptcy Court in the Bankruptcy Case) or applicable law or regulation promulgated by any governmental authority of competent jurisdiction shall be in effect which restrains or prohibits, nor any action, suit or proceeding shall be pending which seeks to restrain or prohibit, the consummation of the Transaction contemplated by this Agreement; and

(iii)     the Bankruptcy Court shall have entered the Approval Order and the Approval Order shall not be subject to a stay or have been vacated or revoked.

If all of the above conditions have not been satisfied by Seller or waived in writing by Purchaser on or prior to the Closing Date, then Purchaser shall have the right to terminate this Agreement, and upon such termination the Deposit shall be returned to Purchaser and neither Purchaser nor Seller shall have any further rights, obligations or liabilities hereunder, except as otherwise set forth herein.

15.     <u>Closing Costs</u>.  Seller shall be responsible for payment of (i) one half (½) of the Closing Escrow costs and fees; (ii) any applicable transfer taxes and stamp fees applicable to the Deed and, if applicable, to the Bill of Sale; (iii) the portion of the premium for the Title Policy that is allocable to standard coverage (*i.e.*, exclusive of extended coverage or any endorsements required by Purchaser) and any endorsements required by Seller to endorse over an Unpermitted Exception; and (iv) recording fees for the Deed and release of any Monetary Liens.  Purchaser shall be responsible for (a) the cost of extended coverage for the Title Policy and any endorsements to the Title Policy required by Purchaser, together with the cost of any title insurance policy or policies obtained in connection with any financing of the Property; (b) one half (½) of the Closing

- 10 -

Escrow costs and fees; and (c) any other recording fees. Each party shall be responsible for payment of its own legal fees in connection with this Agreement.

16.    Default.

(a)    In the event of a default by Seller hereunder which Seller fails to cure within ten (10) days after receipt of written notice thereof from Purchaser, Purchaser shall be entitled, as its sole and exclusive remedy, to either (i) terminate this Agreement by written notice to Seller, in which event the Deposit shall be returned to Purchaser, as liquidated damages and neither party shall have any further rights, obligations, or liabilities hereunder, or (ii) enforce Seller's obligations hereunder by a suit for specific performance, in which event Purchaser shall be entitled to such injunctive relief as may be necessary to prevent Seller's disposition of the Property pending final judgment in such suit. In the event Purchaser elects to pursue the remedy described in clause (i) above, the parties acknowledge and agree that the actual damages in such event are uncertain in amount and difficult to ascertain, and that said amount of liquidated damages was reasonably determined.

(b)    In the event of a default by Purchaser hereunder which Purchaser fails to cure within ten (10) days after receipt of written notice thereof from Seller, Seller shall be entitled to terminate this Agreement by written notice to Purchaser, in which event the Deposit shall be paid to Seller as its sole and exclusive remedy, and neither party shall have any further rights, obligations, or liabilities hereunder. The parties acknowledge and agree that the actual damages in such event are uncertain in amount and difficult to ascertain, and that said amount of liquidated damages was reasonably determined.

17.    Condemnation. If, after the Effective Date and prior to Closing, all or any material portion of the Property is taken by exercise of the power of eminent domain or any proceedings are instituted (or proposed in writing to be instituted) to effect such a taking, Seller shall promptly give Purchaser notice of such occurrence (including without limitation, any notice required to be provided under Chapter 342 of the Nevada Revised Statutes), and if Purchaser reasonably determines that any such partial taking would hinder or result in the Property being unsuitable for Purchaser's intended use thereof, Purchaser may, within fourteen (14) days after receipt of such notice, elect to either (a) terminate this Agreement in which event the Deposit shall be immediately returned to Purchaser and all obligations of the parties hereunder shall cease and this Agreement shall have no further force and effect, except for those indemnity provisions of Section 6(b) or (b) close the Transaction contemplated hereby as scheduled (except that if the Closing Date is less than fourteen (14) days following Purchaser's receipt of such notice, Closing shall be delayed until Purchaser makes such election), in which event Seller shall assign and/or pay to Purchaser at Closing all condemnation awards or other damages collected or claimed with respect to such taking. For purposes of this Section 17, "material portion" shall mean a portion of the Property for which the condemnation award exceeds $500,000.00.

18.    Damage and Destruction. If, after the Effective Date and prior to the Closing Date, any part of the Property shall be destroyed or materially damaged by fire or other casualty not caused by Purchaser's negligence or acts, Seller shall promptly give Purchaser notice of such occurrence, and if Purchaser reasonably determines that any such damage or destruction would

- 11 -

hinder or result in the Property being unsuitable for Purchaser's intended use thereof, Purchaser may, within fourteen (14) days after such notice, elect to either (a) terminate this Agreement, in which event the Deposit shall be promptly returned to Purchaser and neither party shall have any rights, obligations, or liabilities to the other hereunder except as explicitly set forth herein, or (b) close the Transaction contemplated hereby as scheduled (except that if the Closing Date is less than fourteen (14) days following Purchaser's receipt of such notice, the Closing shall be delayed until Purchaser makes such election), in which event Seller shall assign and/or pay to Purchaser at Closing all insurance awards collected or owed to Seller with respect to such damage or destruction and shall credit towards the Purchase Price the amount of any deductible. For purposes of this Section 18, "material damage" shall mean any damage to the Property for which the cost of repair exceeds $500,000.00.

19.    Condition of the Property; Representations and Warranties.

(a)    Purchaser acknowledges and agrees that neither Seller nor any agent, employee, attorney, or representative of Seller has made any statements, agreements, promises, assurances, representations, or warranties, whether express, implied, or otherwise, regarding Seller, the condition of the Property, the suitability of the Property for any uses or purposes contemplated by Purchaser, the zoning of the Property, the right to occupy the Property, the right to develop or re-develop the Property, the environmental condition of the Property, the state of title to the Property and/or any other aspect of or matter pertaining to the Property or any other fact or matter whatsoever, whether pertaining to Seller, the Property, or otherwise.  PURCHASER FURTHER ACKNOWLEDGES AND AGREES THAT (I) IT HAS FULLY EXAMINED AND INVESTIGATED TO ITS FULL SATISFACTION THE PHYSICAL NATURE AND CONDITION OF THE PROPERTY AND ALL ASPECTS THEREOF, INCLUDING, WITHOUT LIMITATION, THE ENVIRONMENTAL CONDITION OF THE PROPERTY AND SURROUNDING PROPERTIES, (II) IT SHALL ACQUIRE THE PROPERTY IN AN "AS IS, WHERE IS" CONDITION AS OF THE CLOSING DATE, (III) SELLER SHALL NOT BE RESPONSIBLE FOR MAKING (OR CONTRIBUTING IN ANY WAY TO THE COST OF MAKING) CHANGES OR IMPROVEMENTS TO THE PROPERTY, OR ANY OTHER ASPECT OF OR MATTER PERTAINING TO THE PROPERTY, AND (IV) IN EXECUTING, DELIVERING, AND PERFORMING ITS OBLIGATIONS UNDER THIS AGREEMENT, PURCHASER HAS NOT RELIED UPON ANY STATEMENT, PROMISE, REPRESENTATION, OR WARRANTY TO WHOMSOEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY, OR IN WRITING, BY ANY PERSON OR ENTITY.  PURCHASER EXPRESSLY WAIVES ANY RIGHT OF RESCISSION AND ALL CLAIMS FOR DAMAGES ARISING IN CONNECTION WITH THE PROPERTY BY REASON OF ANY STATEMENT, REPRESENTATION, WARRANTY, ASSURANCE, PROMISE, OR AGREEMENT, IF ANY, UNLESS EXPRESSLY CONTAINED IN THIS AGREEMENT.   THE PROVISIONS SET FORTH IN THIS SECTION 19(A) SHALL INDEFINITELY SURVIVE THE CLOSING OF THE TRANSACTION CONTEMPLATED UNDER THIS AGREEMENT.

(b)    Purchaser acknowledges and agrees that (i) Purchaser shall be responsible for the decommissioning and removal of Seller's furniture, fixtures and equipment

- 12 -

("**FF&E**") from the Property and for any required demolition work at the Property and (ii) Seller shall have no responsibility with respect thereto.

(c)     Purchaser hereby makes the following representations, each of which is true on the Effective Date and shall be true on the Closing Date in all material respects:

(i)     Purchaser has full power and authority to enter into this Agreement and to perform all the obligations of Purchaser hereunder and no further consent or approval is required in order for this Agreement to constitute a legal, valid and binding obligation of Purchaser; and

(ii)     Purchaser is in compliance with the requirements of Executive Order No. 133224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "**Order**") and other similar requirements contained in the rules and regulations of the Office of Foreign Assets Control, Department of the Treasury ("**OFAC**") and in any enabling legislation or other Executive Orders or regulations in respect thereof (the Order and such other rules, regulations, legislation, or orders are collectively called the "**Orders**").

(iii)     Neither Purchaser, nor to Purchaser's actual knowledge, any beneficial owner of Purchaser:

(1)     is listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC pursuant to the Order and/or on any other list of terrorists or terrorist organizations maintained pursuant to any of the rules and regulations of OFAC or pursuant to any other applicable Orders (such lists are collectively referred to as the "**Lists**");

(2)     is a person or entity who has been determined by competent authority to be subject to the prohibitions contained in the Orders; or

(3)     is owned or controlled by, or acts for or on behalf of, any person or entity on the Lists or any other person or entity who has been determined by competent authority to be subject to the prohibitions contained in the Orders.

Notwithstanding anything contained herein to the contrary, for the purposes of this provision, the phrase "any beneficial owner of Purchaser" shall not include (x) any holder of a direct or indirect interest in a publicly traded company whose shares are listed and traded on a United States national stock exchange, or (y) any limited partner, unit holder or shareholder owning an interest of five percent (5%) or less in Purchaser or in the holder of any direct or indirect interest in Purchaser.

The representations of Purchaser in this Section 19(c) shall survive the Closing indefinitely.

NAI-1514195225v8

(d)     Seller hereby makes the following representations, each of which is true on the Effective Date and clauses (i), (ii), (vii) and (viii) only of which (the "**Fundamental Seller Representations**") shall be true on the Closing Date in all material respects:

(i)     Seller has full power and authority to enter into this Agreement and to perform all the obligations of Seller hereunder and, except for the Approval Order having been entered by the Bankruptcy Court and any consents or approvals required in connection with the Bankruptcy Case being obtained, no further consent or approval is required in order for this Agreement to constitute a legal, valid and binding obligation of Seller;

(ii)    Seller is not a foreign person, as that term is defined under Section 1445 of the Internal Revenue Code, and at Closing, Seller shall provide Purchaser with an affidavit, in customary form, establishing that Purchaser is not required to withhold any portion of Seller's proceeds;

(iii)   Seller has received no written notice of any formal action, litigation, investigation, condemnation or proceeding of any kind pending against any portion of the Property;

(iv)    There are no leases or other agreements for use, occupancy or possession with respect to all or any portion of the Property that will survive the Closing or be binding upon Purchaser.  Except for this Agreement, Seller has not entered into any contract or agreement with respect to the sale of the Property or any portion or portions thereof.  Except for this Agreement, Seller has not entered into, and has no actual knowledge of, any other written agreement, commitment, option or right of first refusal with respect to the purchase, assignment or transfer of all or any portion of the Property.  There are no management agreements, brokerage agreements, leasing agreements or service contracts in force or effect that grant to any person or entity any right, title, interest or benefit in and to all or any part of the Property or any rights relating to the use, operation or management of all or any part of the Property that will survive the Closing or be binding upon Purchaser;

(v)     Seller has not received written notice from any governmental authority that the Property fails to materially comply with Hazardous Substances Laws (as defined below).  For purposes of this Agreement, "**Hazardous Substance Laws**" shall mean and include the Comprehensive Environmental Response, Compensation and Liability Act, the Superfund Amendment and Reauthorization Act, the Resource Conservation Recovery Act, the Federal Water Pollution Control Act, the Federal Insecticide, Fungicide, and Redenticide Act, the Clean Water Act, the Clean Air Act or any other applicable federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability (including strict liability) or standards of conduct concerning any hazardous substances.  For purposes of this Agreement, the term "**Hazardous Substances**" shall mean and include any materials, wastes or substances defined or classified as hazardous or toxic under any existing Hazardous Substance Laws due

- 14 -

to such substance's harmful or potentially harmful effect upon health, safety or the environment;

(vi)     There are no tax appeals pending with respect to the Property;

(vii)    Seller is in compliance with the requirements of the Orders; and

(viii)   Neither Seller, nor to Seller's actual knowledge, any beneficial owner of Seller:

(1)     is listed on the Lists;

(2)     is a person or entity who has been determined by competent authority to be subject to the prohibitions contained in the Orders; or

(3)     is owned or controlled by, or acts for or on behalf of, any person or entity on the Lists or any other person or entity who has been determined by competent authority to be subject to the prohibitions contained in the Orders.

Notwithstanding anything contained herein to the contrary, for the purposes of this provision, the phrase "any beneficial owner of Seller" shall not include (x) any holder of a direct or indirect interest in a publicly traded company whose shares are listed and traded on a United States national stock exchange, or (y) any limited partner, unit holder or shareholder owning an interest of five percent (5%) or less in Seller or in the holder of any direct or indirect interest in Seller.

Except for the Fundamental Seller Representations, which shall survive the Closing indefinitely, the representations of Seller in this Section 19(d) shall survive the Closing for a period of six (6) months after the Closing Date (the "**Survival Period**"). Any right of action by Purchaser for the breach of any such representation by Seller shall not merge with the Deed delivered at the Closing but shall survive the Closing for the Survival Period and before the expiration thereof Purchaser must have filed an action in a court of competent jurisdiction, and any representation not specified in such action shall expire. Seller and Purchaser agree that, following the Closing, Seller shall be liable for the direct, but not consequential, special or punitive, damages resulting from any breach of such representations; provided, however, that: (i) following Closing, the total liability of Seller for all such breaches and any matters relating thereto or under any law applicable to the Property or this Transaction shall not, in the aggregate, exceed Five Hundred Thousand and No/100 Dollars ($500,000.00) (the "**Claim Cap**"); and such representations are personal to Purchaser and may not be assigned to or enforced by any other person, other than to an assignee of Purchaser in accordance with Section 24 hereof. Purchaser further agrees that, following the Closing, no claim may or shall be made for any alleged breach of any such representations made by Seller unless the amount of such claim or claims, individually or in the aggregate, exceeds Seventy Five Thousand and No/100 Dollars ($75,000.00) (the "**Threshold Amount**"), in which case Purchaser shall be entitled to

recover the amount that exceeds the Threshold Amount, up to, but not in excess of, the Claim Cap.

20.    Release.

(a)    From and after the Closing Date, Purchaser assumes any and all obligations and liabilities whatsoever arising with respect to (i) the correction of any violation or claimed violation of any law, statute, ordinance or regulation relative to the use, generation, storage, release, threatened release, discharge, disposal or presence on, under or about the Property, or transportation to or from the Property of any Regulated Substances, or the condition of the Property, (ii) the risk that adverse physical environment conditions may not have been revealed by its own investigation of the Property (iii) any and all obligations or liabilities to third parties (including, without limitation, governmental entities and agencies) arising out of activities at the Property, and (iv) any requirements imposed by the regulations of the Nevada EPA (or equivalent state and/or local agencies) (the "**Purchaser Environmental Obligations**").

(b)    Purchaser also agrees, except for Seller's fraud or intentional misrepresentation, to waive any and all claims it may have against Seller under Comprehensive Environmental Response, Compensation, Liability Act of 1980, as amended, the Response Conservation and Recovery Act, or any other federal, state or local law, whether statutory or common law, ordinance or regulation pertaining to the release of Regulated Substances to the environment from or at the Property (the "**Environmental Release Laws**").

(c)    Except for Seller's fraud or intentional misrepresentation, Purchaser hereby waives, releases, remises, acquits and forever discharges, Seller and its directors, officers, trustees, members, employees and agents and their respective heirs, successors, personal representatives and assigns, none of whom admit any liability, of and from any and all claims, demands, damages, actions, legal or administrative proceedings, causes of actions or suits of any kind or nature, at law or in equity (collectively, the "**Losses**"), known or unknown, which it or they or any third party (including any governmental authority or agency ever had, now has, hereafter can, shall or may have or acquire or possess, or in any way connected with, based upon, or arising out of the condition, status, quality, nature contamination or environmental state of the Property, including, without limitation, the Environmental Release Laws or any Purchaser Environmental Obligations.

(d)    For the purposes of this Agreement, the term "**Regulated Substances**" shall mean any materials, wastes or substances defined or classified as hazardous or toxic under any existing or future federal, state or local law, ordinance or regulation due to such substance's harmful or potentially harmful effect upon health, safety or the environment. The provisions set forth in this Section 20 shall survive Closing under this Agreement.

21.    Bankruptcy Court Matters.    As promptly as reasonably practicable after the Effective Date, Seller will file with the Bankruptcy Court a motion seeking entry of the Approval Order authorizing the sale of the Property pursuant to the terms of this Agreement. For purposes of this Agreement, "**Approval Order**" means an order entered by the Bankruptcy Court pursuant

- 16 -

to Section 363 of the Bankruptcy Code, authorizing and approving, among other things, the Transaction, in accordance with the terms and conditions of this Agreement, which order will be in a form and substance reasonably acceptable to the parties. Purchaser and Seller agree to use commercially reasonable efforts to cause the Bankruptcy Court to enter the Approval Order, including Purchaser's furnishing of affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under section 363(m) of the Bankruptcy Code.

22.  Notices.  All notices or other communications provided for under this Agreement shall be in writing, signed by the party giving the same, and shall be personally delivered, or sent by a reputable national overnight delivery service, or sent via email to the addresses set forth below. A notice shall be deemed properly given and received (i) if personally delivered, upon the earlier to occur of actual delivery or refusal to accept delivery, (ii) if sent by email, when confirmation of transmission is received or, if such confirmation is received on a day other than a business day, on the next business day, and (iii) if delivered by overnight delivery service, upon the earlier to occur of actual receipt, refusal to accept receipt or on the next business day after delivery to the overnight delivery service. If confirmation of transmission is not received for any notice sent via email within one (1) business day of such transmission, then the party that has sent notice via email shall also provide such notice via personal delivery or overnight delivery service. Addresses may be changed by written notice given as provided herein and signed by the party giving the notice.

Notices to Seller:

LSC Communications US, LLC
191 N. Wacker Drive, Suite 1400
Chicago, IL 60606
Attention:  Michael King
Email: michael.p.king@lsccom.com

With copy to:

Jones Day
77 West Wacker, Suite 3500
Chicago, Illinois 60601
Attention:  Brian L. Sedlak, Esq.
Email: brianlsedlak@jonesday.com

NAI-1514195225v8

<u>Notices to Purchaser</u>:

Avenue 55, LLC
600 University St., Suite 2305
Seattle, WA 98101
Attention:  Joseph Blattner and Drew Zaborowski
Emails:  jblattner@avenue55.net and
dzaborowski@avenue55.net

<u>With copy to</u>:

Jameson Pepple Cantu PLLC
801 Second Avenue, Suite 700
Seattle, WA 98104
Attention:  Anne DeVoe Lawler
Email:  alawler@jpclaw.com

Each party shall have the right to designate other or additional addresses or addressees for the delivery of notices, by giving notice of the same to the other party hereto (such other or additional addresses or addressees being effective from and after the date of receipt of notice of the same by the other party.)

23.   <u>Brokers</u>.  Seller and Purchaser each represent and warrant to the other that it has not dealt with any agents, brokers or finders in connection with the Transaction covered by this Agreement other than Daniel Buhrmann of CBRE, Inc. ("**Seller's Broker**"), representing Seller, and Eric Bennett of CBRE, Inc. ("**Purchaser's Broker**"), representing Purchaser, both of whose commission shall be paid by Seller pursuant to a separate agreement with Seller.  Each of the parties hereto agrees to indemnify and hold the other harmless from and against any claims, actions, liabilities, costs and expenses with respect to any brokerage commission or finder's fee asserted by a person, firm or corporation (other than Purchaser's Broker and Seller's Broker) claiming to have been engaged by, through or under the indemnifying party.  Seller and Purchaser hereby acknowledge that the foregoing representation and warranty shall survive the Closing. Seller shall be responsible for paying any brokerage commission due to Seller's Broker pursuant to a separate agreement.

24.   <u>Assignability</u>.  Neither this Agreement nor the rights of Purchaser under this Agreement may be assigned or transferred, in whole or in part, to any other party without the prior written consent of Seller, which consent may be withheld for any reason or for no reason. Notwithstanding anything to the contrary set forth herein, Purchaser may assign this Agreement to an entity formed for acquiring the Property, so long as Joseph Blattner, has a direct or indirect ownership interest in, and manages and is involved in the day-to-day operations of, such entity. Upon any permitted transfer, Purchaser shall remain liable for its obligations under this Agreement.  Such assignment shall be in writing, contain an express assumption of all of Purchaser's duties and obligations hereunder, shall not be effective until written notice of same is received by Seller, and shall in no event be deemed to constitute a release of any obligations of

- 18 -

Purchaser hereunder.  This Agreement shall be binding upon and enforceable against, and shall inure to the benefit of, Purchaser and Seller and their respective successors and permitted assigns.

25.     Captions For Convenience.  All headings and captions used in this Agreement are for convenience only and are of no meaning in the interpretation or effect of this Agreement.

26.     Applicable Law.

(a)     This Agreement shall be interpreted and enforced according to the laws of the State of Nevada.

(b)     Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court will retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the Transaction, and (ii) any and all proceedings related to the foregoing will be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court for such purposes and will receive notices at such locations as indicated in Section 22; provided, however, that if the Bankruptcy Case has been closed pursuant to Section 350 of the Bankruptcy Code, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the federal or state courts sitting in Washoe County, Nevada, for the resolution of any such claim or dispute.  The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(c)     Each of the parties hereby consents to process being served by any other party in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 22; provided, however, that such service will not be effective until the actual receipt thereof by the party being served.

27.     No Waivers.  Any waiver of a breach of any provision contained in this Agreement must be in writing.  No waiver of any breach shall be deemed a waiver of any preceding or succeeding breach, nor of any other breach of a provision contained in this Agreement.

28.     Construction.   Seller and Purchaser hereby acknowledge that both parties participated equally in the negotiation of this Agreement and that no court construing this Agreement shall construe it more stringently against one party than against the other, regardless of which party's counsel drafted this Agreement.

29.     Time Of The Essence.  Time is of the essence with respect to performance required under this Agreement.

30.     Entire Agreement.  This Agreement and the attached exhibit(s) represent the entire understanding between the parties with respect to the subject matter of this Agreement, and all

- 19 -

prior agreements and understandings between the parties with respect to the subject matter of this Agreement shall be deemed merged in this Agreement.

31.     <u>No Oral Amendment Or Modification</u>.  No amendments, waivers, or modifications of this Agreement shall be made or deemed to have been made unless in writing executed by both Seller and Purchaser.

32.     <u>Non-Business Days</u>.  If the Closing Date or the date for delivery of a notice or performance of some other obligation of a party falls on a Saturday, Sunday or legal holiday in the State of Nevada, then the Closing Date or such notice or performance shall be postponed until the next business day.

33.     <u>Email/Facsimile Signatures; Counterparts</u>.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all such counterparts shall be deemed to constitute one and the same instrument.  Signatures on this Agreement may be communicated by email or facsimile transmission and shall be binding upon the parties transmitting the same by email or facsimile transmission.

[Signature page follows.]

- 20 -

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the Effective Date.

**SELLER:**

LSC Communications US, LLC,
a Delaware limited liability company

By: _____

Name: _Michael P King_____

Title: _SVP LSC Communications_____

**PURCHASER:**

Avenue 55, LLC, a Washington limited liability
company

By: _____

Name: _JOSEPH D. BLATTNER_____

Title: _PRESIDENT_____

<u>**EXHIBIT A**</u>
LEGAL DESCRIPTION OF PROPERTY

All that certain real property situate in the County of Washoe, State of Nevada, described as follows:

PARCEL 1:

Parcel 2 as shown on Parcel Map No. 2883, for R.R. Donnelley & Sons, Co., according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on March 8, 1995, as File No. 1876377, Official Records.

APN: 090-051-01

PARCEL 2:

Parcel 1 as shown on Parcel Map No. 3873, for R.R. Donnelley & Sons, Company, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 5, 2002, as File No. 2696140, Official Records.

APN: 090-051-16

PARCEL 3:

Parcel A as shown on Parcel Map No. 4023, for R.R. Donnelley & Sons, Company, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 12, 2003, as File No. 2870937, Official Records.

APN: 090-051-22

PARCEL 4:

Parcel C as shown on Parcel Map No. 4023, for R.R. Donnelley & Sons, Company, according to the map thereof, filed in the office of the County Recorder of Washoe County, State of Nevada, on June 12, 2003, as File No. 2870937, Official Records.

APN: 090-051-24

# **EXHIBIT B**

PROMISSORY NOTE

[see attached]

## PROMISSORY NOTE

$250,000.00                                            Dated: September ___, 2020
                                                        Seattle, Washington

        FOR VALUE RECEIVED, the undersigned, AVENUE 55, LLC, a Washington limited liability company ("Maker"), hereby promises to pay to the order of TICOR TITLE OF NEVADA, INC. ("Holder"), in Holder's capacity as escrow agent for LSC COMMUNICATIONS US, LLC, a Delaware limited liability company ("LSC"), the principal sum of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00), payable on demand in accordance with that certain Real Estate Purchase and Sale Agreement between Maker, as Purchaser, and LSC, as Seller, dated September 24, 2020 (the "Agreement").

        Maker promises to pay on demand all costs, expenses and attorneys' fees incurred by Holder in the exercise of any remedy (with or without litigation) under this Note in any proceeding for the collection of the debt evidenced by this Note, or in any litigation or controversy arising from or connected with this Note.

        Delay in exercising any of the Holder's rights or options hereunder shall not constitute a waiver thereof, and waiver of any right or option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

        This Note shall be construed according to the laws of the State of Nevada and pursuant to the terms and conditions of the Agreement.

        Time is of the essence of this Note and each and every term and provision hereof.

**MAKER**:

AVENUE 55, LLC


By: _____

Name: _____

Title: _____

## **EXHIBIT C**
DEED

[see attached]

APN: _____
Escrow No. _____
The undersigned hereby affirms that this
document submitted for recording does not
contain the social security number of any
person or persons.  (Per NRS 239B.030)

**WHEN RECORDED, MAIL TO:**

**MAIL TAX STATEMENTS TO:**

## GRANT, BARGAIN AND SALE DEED

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, _____, do(es) hereby GRANT, BARGAIN, SELL and CONVEY to _____ (whose address is: _____), the real property situate in the County of Washoe, State of Nevada, described in **Exhibit "A"** attached hereto and incorporated herein by this reference.

TOGETHER with the tenements, hereditaments and appurtenances, including easements and water rights, if any, thereto belonging or appertaining, and any reversions, remainders, rents, issues or profits thereof.

IT BEING ACKNOWLEDGED that this conveyance is made pursuant to that certain order of the United States Bankruptcy Court for the Southern District of New York with regard to the chapter 11 bankruptcy case, *In re LSC Communications, Inc., et al.*, Case No. 20-10950 (SHL), such order having been entered on [_____, 2020], as [Order (I) Authorizing and Approving the Debtors' Entry into the Purchase Agreement, (II) Approving the Sale of Certain of the Debtors' Real Property Free and Clear of Liens, Claims, and Encumbrances, (III) Authorizing the Debtors to Take All Actions Necessary to Consummate the Sale, and (IV) Granting Related Relief].

NAI-1514195225v8

DATED: this _____ day of _____, 2020.

**[TO BE PROVIDED]**


**By:** _____

**Print Name:** _____

**Its:** _____


STATE OF    )

)ss.

COUNTY OF            )


This instrument was acknowledged before me on _____, 2020, by _____, as _____ of _____.


_____

Notary Public

My Commission Expires: _____

## EXHIBIT "A"
## to Grant, Bargain and Sale Deed

**Legal Description**

NAI-1514195225v8