UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: LSC Communications, Inc., *et al.*,

        Debtors.

William K. Harrington, United States Trustee,

        Appellant,

v.

LSC Communications, Inc.,

        Appellee

20-CV-5006 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Appellant William K. Harrington, the United States Trustee ("the Trustee"), appeals from an order of the United States Bankruptcy Court for the Southern District of New York allowing appellee-debtor LSC Communications, Inc. ("LSC") to pay retention bonuses to certain employees as part of LSC's bankruptcy. (Dkt. No. 1.) The Trustee argues that the Bankruptcy Court erred in holding that the Bankruptcy Code does not prohibit six employees from receiving such bonuses. LSC opposes and contends that this appeal should be dismissed as equitably moot. For the reasons that follow, the Court reverses.

**I.    Background**

    LSC is a Delaware corporation with its headquarters in Chicago. (Dkt. No. 8-1 ("App.") at 30.) It has 19,500 employees worldwide, around 15,800 of whom are in the United States. (App. at 31.) Facing liquidity problems, LSC announced the eventual termination of

1

approximately 1,242 employees in January 2020 and filed for chapter 11 bankruptcy on April 13, 2020. (App. at 1–25, 27.)

As part of the bankruptcy, LSC sought an order authorizing it to implement a "Key Employee Retention Plan" ("KERP"). (App. at 110–185.) The 190 employees LSC selected for compensation under the KERP were those with "in-depth knowledge of [LSC]'s businesses, assets, liabilities, counterparties[,] and operations" and were "crucial" to LSC's ability to continue operating. (App. at 122 ¶ 25.) Such incentives, LSC represented, were critical to retaining these employees during an uncertain time for the company. (*Id*.)

The KERP payments, totaling $8 million, were contingent solely on employees' continued employment and divided into "tiers" of employees who would receive bonuses of varying sizes the longer they remained with the company. (App. at 122–126.) The 11 participants in the top two tiers were to receive up to $1.8 million collectively under the KERP. (App. at 124.) In its original motion, LSC did not explain these tiers, identify the participants, or provide information about titles or job duties except that none of the 190 employees it selected for the KERP had "discretionary control or any substantial budgetary amounts, company policies[,] or the disposition of corporate assets." (App. at 128 ¶ 39.) LSC represented that none of the 190 KERP employees "serve as directors, participate in [LSC]'s corporate governance[,] or act[] without senior management or executive approval." (App. at 128–29 ¶ 39.)

The Trustee objected, arguing that LSC had failed to provide sufficient information to determine whether the 190 KERP employees were exempt from receiving such compensation as corporate "insiders" under the Bankruptcy Code, particularly since six KERP employees are

2

elected officers.[1] (App. at 211–12.) LSC stated that the six employees at issue were appointed as LSC officers by the Board "in order to fulfill roles required by Delaware corporate law." (App at 222 ¶ 21, 241 ¶ 7.) But it maintained they were not insiders because none of the six had "broad decision-making authority to bind" LSC, "authority to implement company policies," "corporate governance responsibilities," or "discretionary control" over their operating budgets. (App. at 221–22 ¶¶ 20–21.)

The Bankruptcy Court held a hearing at which it heard, *inter alia*, the Trustee's objection. (*See* App. 252–92.) In analyzing the six KERP employees at issue, the Bankruptcy Court "look[ed] to the economic substance" of the employees' situation, essentially finding that the six employees at issue were officers in title only. (*See* App. 285–289.) The Bankruptcy Court ruled for LSC and approved the plan in all respects, finding that the six KERP employees at issue were not statutory corporate insiders, despite their appointment by LSC's Board, and were thus eligible for the KERP payments. (*Id*.)

The Trustee appealed on June 19, 2020. (*See* App. 293–301.)

## II.   Legal Standard

A bankruptcy court's conclusions of law are reviewed *de novo*, and its findings of fact are reviewed for clear error. *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). For a mixed question of law and fact, the standard of review "depends ... on whether answering it entails primarily legal or factual work." *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018).

---

[1] The job titles of the six employees are: (1) President of Publishing & Deputy General Counsel; (2) Senior Vice President FP&A, M&A; (3) Senior Vice President, Tax; (4) Senior Vice President, Human Resources; (5) Vice President of Finance; and (6) Vice President, Corporate Benefits. (App. at 246.)

### III. Discussion

The Trustee appeals from the Bankruptcy Court's determination that the six employees at issue were not barred from receiving KERP payments as statutory "insiders" under the Bankruptcy Code. LSC opposes, and argues this appeal is equitably moot as the Trustee failed to seek a stay of the Bankruptcy Court's order and LSC has already made KERP payments to the relevant employees. The Court examines the equitable mootness issue first.

#### A. Whether This Appeal is Equitably Moot

LSC argues that, because the Trustee failed to seek a stay of the Bankruptcy Court's order, and thus any decision reversing the Bankruptcy Court would require clawing back payments from the employees at issue, the appeal should be dismissed as equitably moot.

"Even when a bankruptcy appeal is not constitutionally moot, it should be dismissed as equitably moot when, 'even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable.'" *In re RS Old Mill, LLC*, 20 Civ. 743, 2020 WL 2306447, at *4 (S.D.N.Y. May 8, 2020) (emphasis in original) (quoting *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005) (quoting *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("*Chateaugay I*")). Equitable mootness is "concerned with whether a particular remedy can be granted without unjustly upsetting a debtor's plan of reorganization." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 481 (2d Cir. 2012).

There are two circumstances in which courts in the Second Circuit look for equitable mootness in the bankruptcy context: when an unstayed order results in a "comprehensive change in circumstances," *Chateaugay I*, 988 F.2d at 325, and when a reorganization is "substantially consummated," *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir. 1993) ("*Chateaugay II*").

With regard to unstayed orders, dismissal under equitable mootness "is appropriate when the appellant has made no effort to obtain a stay and has permitted such a comprehensive change

4

of circumstances to occur as to render it inequitable for the appellate court to reach the merits of the appeal." *Chateaugay I*, 988 F.2d at 325. The standard for what constitutes a "comprehensive change of circumstances" is not clearly defined and is considered by courts on a case-by-case basis. *See, e.g.*, *RS Old Mill*, 2020 WL 2306447 at *4; *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 889 (S.D.N.Y. 1994).

The standard for equitable mootness following the second category, substantial consummation of a reorganization, is more defined: an appeal is presumed equitably moot where a reorganization has been substantially consummated, and the presumption may be overcome if a party meets five "*Chateaugay* factors." *Charter Commc'n*, 691 F.3d at 482. These are:

> (1) "the court can still order some effective relief";
> (2) "such relief will not affect the re-emergence of the debtor as a revitalized corporate entity";
> (3) "such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court";
> (4) "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings"; and
> (5) "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."

*Chateaugay II*, 10 F.3d at 952–53 (internal citations, quotations, and alterations omitted). Appellants have the burden to show these factors have been met. *Charter Commc'ns*, 692 F.3d at 482. In the absence of an express test, courts have also found these factors "instructive" in determining whether a "change of circumstances" has occurred. *In re Delta Air Lines, Inc.*, 374 B.R. 516, 523 (S.D.N.Y. 2007); *see, e.g.*, *In re Arcapita Bank B.S.C.(c)*, 2014 WL 46552, at *6 (S.D.N.Y. Jan. 6, 2014).

Here, LSC argues that the Trustee's failure to seek a stay of the Bankruptcy Court's Approval Order — allowing LSC to make most, if not all, of the KERP payments — has resulted

5

in a "change of circumstances" meriting dismissal under the equitable mootness doctrine. (Dkt. No. 9 at 34–38.) LSC challenges the first, fourth, and fifth *Chateaugay* factors.

On the first factor — whether the Court can still order effective relief — LSC contends that clawing back already-paid funds is impossible. But the two district court cases it cites involve payments made to parties beyond the reach of the debtor, not current (or very recent) employees. *See In re PC Liquidation Corp.*, 2008 WL 199457 (E.D.N.Y. Jan. 17, 2008); *Delta Air Lines*, 374 B.R. 516. This Court sees no reason why such relief would be ineffective here.

On the fourth — whether the affected parties have notice of the appeal and an opportunity to participate — LSC does not argue that the six employees at issue lacked notice of the present appeal. Instead, LSC cites two out-of-circuit cases. *In re Shawnee Hills, Inc.* featured payroll checks to hundreds of employees who were not represented either before the Bankruptcy Court or on appeal. 2002 WL 31681538, at *3 (S.D.W.V. Nov. 19, 2002). Because "[m]ost people promptly spend much or all of their regular paychecks on living expenses" and "the Bankruptcy Court's order involved distributing funds to cover regular employee paychecks," the court found that the failure to stay the order would "impose a significant hardship" on such employees and weighed heavily in favor of finding equitable mootness. *Id*. at *3–4. And in *In re Trans World Airlines*, the court found that, because the reorganization involved the sale of all of the debtor's assets to another airline, overturning the order would "affect all third parties with an economic stake in the sale, including debtors' 20,000 employees, the St. Louis region, and consumers who have purchased [airline] tickets that [the new airline] has assumed." 2002 WL 500569, at *2 (D. Del. Mar. 26, 2002).

Unlike *In re Shawnee Hills, Inc.*, the present case does not involve "regular employee paychecks" for hundreds, but bonuses for six high-level employees. And the bankruptcy at issue

6

does not implicate the same large-scale considerations faced by the court in *In re Trans World Airlines*. It is noteworthy that LSC has not argued that the six employees at issue lacked notice of the present appeal. But it is also true that the Trustee has not *affirmatively* demonstrated that "the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings." *Chateaugay II*, 10 F.3d at 943. Ultimately, though, the Court infers that the employees likely had notice of the case, and in any event have been represented by LSC, which has interests that align with those of the employees.

Finally, LSC contends that the fifth factor — whether "the appellant pursued with diligence all available remedies to obtain a stay of execution of the objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from" — weighs heavily in its favor. *Chateaugay II*, 10 F.3d at 943. Certainly, the Trustee could have addressed this issue by seeking a stay, and the failure to do so is regrettable. But the second half of the factor, whether the Trustee's failure renders reversal inequitable, weighs against LSC. If the payments were illegal, as the Trustee alleges, then clawing back such payments is equitable. *See In re Charter Commc'ns, Inc.*, 692 F.3d at 484 ("[I]f the [settlement] were unlawful, it would not be inequitable to require the parties to that agreement to disgorge their ill-gotten gains, participation in the appeal or not."). The failure to obtain a stay is much more dire with regard to orders confirming a reorganization plan. *See, e.g.*, *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 144–45 (2d. Cir. 2005).

In sum — and especially given that LSC does not challenge *Chateaugay* factors two or three — the analysis weighs against a finding of equitable mootness.

7

B.   **Whether the Six Employees Were Ineligible for KERP Payments**

The Trustee argues that the Bankruptcy Court erred by finding that the six employees at issue were not prohibited from receiving KERP payments under the Bankruptcy Code. Section 503(c) of the Bankruptcy Code provides:

> "[T]here shall neither be allowed, nor paid--
> **(1)** a transfer made to . . . an insider of the debtor for the purpose of inducing such person to remain with the debtor's business, absent a finding by the court based on evidence in the record that--
> **(A)** the transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation;
> **(B)** the services provided by the person are essential to the survival of the business; and
> **(C)** [the payment amount is within the statutory limits]."

11 U.S.C. § 503. The Bankruptcy Code defines a corporate "insider" as including:

> **(i)** director of the debtor;
> **(ii)** officer of the debtor;
> **(iii)** person in control of the debtor;
> **(iv)** partnership in which the debtor is a general partner;
> **(v)** general partner of the debtor; or
> **(vi)** relative of a general partner, director, officer, or person in control of the debtor;

11 U.S.C. § 101(31)(B). That list is non-exhaustive. *See U.S. Bank Nat Ass'n v. Village at Lakeridge, LLC*, 138 S. Ct 960, 963 (2018). No Bankruptcy Code provision defines "officer." The statutory text therefore provides little guidance beyond its plain meaning.

The Bankruptcy Court held, citing *In re Borders Group, Inc.*, 453 B.R. 459 (S.D.N.Y. 2011), that "a title is insufficient to establish that an individual is a director or an officer." (App. at 287.) The Bankruptcy Court's analysis of whether an employee is an officer, based in part on dictionary definitions, included whether an employee "exercises sufficient authority," "dictat[es] corporate policy [or] disposition of assets," sits on the board, or has officer-level responsibilities. (App. at 289.) Finding that the six employees at issue did not meet this functional test, the

8

Bankruptcy Court determined that they were not officers and, thus, not precluded under Bankruptcy Code § 503(c) from receiving KERP funds.

The Trustee argues that since LSC is a "creature of state law," questions about whether the employees are officers should be governed by the law of Delaware, where it is incorporated. *Rodriguez v. Fed. Deposit Ins. Corp.*, LSC 140 S. Ct. 713, 718 (2020) (citation omitted); *see also Pereira v. Farace*, 415 F.3d 330, 341 (2d Cir. 2005) ("Because [the company at issue] is incorporated in Delaware we apply Delaware law to the questions presented to us."). The Trustee maintains that the fact that the six employees would be deemed officers under Delaware law — which LSC does not dispute — is dispositive, rendering them corporate insiders ineligible for KERP funds. LSC contends that state law is largely irrelevant to determining who constitutes an officer and that the Bankruptcy Court's functional interpretation was correct.

The case law on this point is less than clear. Some courts have explicitly stated that courts should not look to state law to define the term officer in the Bankruptcy Code. *See, e.g.*, *In re NMI Systems, Inc.*, 149 B.R. 357, 371 (Bankr. D.C. 1995) ("disagree[ing]" with the notion that "state law ought to supply the answer to who is an 'officer' under 11 U.S.C. § 101(31)."). But courts often turn to state law as part of their analysis, as the *NMI Systems* court did in determining that the employee at issue was not an officer. *Id*. Analyzing the same Delaware code at issue in this case, the *NMI Systems* court determined that the fact that the employee there was not elected as an officer by the board or selected to be an officer by another officer — as Delaware corporate law requires to be deemed an officer — weighed in favor of a finding that he was *not* an officer. *Id*.

The Trustee nevertheless cites *In re Longview Aluminum, LLC* to support the proposition that LSC's Delaware incorporation means this Court should apply Delaware corporate law to

9

determine whether the six employees are officers. 657 F.3d 507 (7th Cir. 2011). But while in that case the Seventh Circuit affirmed the district court's decision to look to Delaware law, it also confirmed that "it is not simply the title 'director' or 'officer' that renders an individual an insider; rather, it is the set of legal rights that a typical corporate director or officer holds." *Id*. at 510 (citation omitted).

The Trustee points to no case for the explicit proposition that state law exclusively applies when determining whether an employee is an officer. Rather, as in *NMI Systems*, the analysis under state law appears to be one of several factors courts have considered. In *Borders* court explained that courts analyzing whether an employee is an officer have looked to: (1) definitions of "officer" in Black's Law Dictionary; (2) state corporate law, such as the Delaware Code; and (3) whether the employee was elected or appointed by the board, which is "frequently identified as distinguishing 'officer' positions from other titled positions within a corporation" and is "ordinarily" sufficient to render an employee an officer as a matter of law. *Borders*, 453 B.R. at 468 (quoting *Office of the U.S. Trustee v. Fieldstone Mortgage Co.*, 2008 WL 4826291, at *3 n.12, *4 (D. Md. Nov. 5, 2008)). *See also NMI Systems*, 179 B.R. at 370–71 ("[The employee] does not appear . . . to have been an elected officer, one of the few blessed by a vote of the board of directors to be an officer. He thus did not enjoy that prestigious affinity that exists among elected officers that in appropriate circumstances may *per se* threaten preferential treatment . . . .").

The case that most directly supports the Trustee's *per se* approach is the Maryland District Court's decision in *Fieldstone*. 2008 WL 4826291. There the court held that the board's appointment or election of someone as an "officer" unambiguously renders that person an "officer" for purposes of the Bankruptcy Code — both as a matter of plain meaning and state law

10

— so no further inquiry into their authority or duties within the corporation is warranted. *Id.* at *4–5 & n.14. Indeed, nearly all of the cases adopting a more functional approach, including *Borders*, appear to involve employees who were *not* appointed by the Board, so they are at least arguably distinguishable.

The Court is also persuaded by Judge Sontchi's reasoning in *In re Foothills Texas, Inc.*, and in particular his conclusion that "[t]he definition of officer and, thus, insider, should not be tailored to fit just one section of the Bankruptcy Code." 408 B.R. 573, 581 (Bankr. D. Del. 2009). "Rather, the definition should be based upon the plain meaning of the word officer." *Id.* "There is no rational basis under the plain meaning of the relevant words to further limit the definition of officers to those 'in the collective group exercising overall authority regarding the debtor's corporate decisions.'" *Id.*[2] From a policy standpoint, giving more weight to an objective criterion — whether an employee was appointed by the board — provides better guidance to parties than a functional, non-exhaustive test.

While a functional approach, like that performed in *Borders*, may be appropriate in many cases, the Court agrees with the Trustee that with respect to officers *appointed or elected by the Board*, such individuals are "officers" under the Bankruptcy Code, at least absent a particularly strong showing that they do not perform a significant role in management.

The Bankruptcy Court below did acknowledge the proposition that board appointment or election "ordinarily" renders an employee an officer as a matter of law. (App. at 286 (citing

---

[2] While eschewing an overtly functional approach to defining "officer," the *Foothills Texas* court acknowledged that "the mere title of a person does not end the inquiry," 408 B.R. at 579, and "the type of evidence that might support finding a person to be an officer may vary from case to case based on the facts and circumstances surrounding the debtor's business," *id.* at 583. The court ultimately held that a person holding the an officer title is presumptively an officer under the statute, subject to rebuttal by "submission of evidence sufficient to establish that the officer *does not, in fact, participate in the management of the debtor*." *Id.* at 583 (emphasis added).

11

*Borders*, 453 B.R. at 468 (quoting *Fieldstone*, 2008 WL 4826291 at *4)).) Alongside the *Borders* court's warning that "[a]n individual's title, by itself, is insufficient to establish that an individual is a director or an officer," 453 B.R. at 468–69, the Bankruptcy Court looked beyond the employees' title and board appointment to "the economic substance and to what really is going on," including "whether someone exercises sufficient authority." (App. at 287, 289.)

But again, the employees at issue in *Borders* were not board-appointed or -elected. *Id*. at 469–70. The *Borders* court's admonishment about employee titles comes in the context of employees who had officer-sounding *titles* but who were not board-appointed. Thus, *Borders* should be read for the proposition that, *in the absence of board appointment*, a title is insufficient. And *title* should not be conflated with *board appointment*. "Mere title" is overlooked by the law as a distracting formality, while board appointment has significance as a matter of law and legal meaning.

The Bankruptcy Court's analysis is contradicted by *Fieldstone*, cited in *Borders*, in which the court warned that "[i]nsofar as the bankruptcy court understood the definition of 'officer' to require additional 'traditional' elements, like major decision-making, it expanded the term beyond its ordinary legal meaning." 2008 WL 4826291, at *4. In cases where "the disputed officers were not elected or appointed by the Board," further factual inquiry by "peer[ing] 'behind the titles' . . . for further evidence of their officer and insider status" is "justified." *Id*. at *5. But, the *Fieldstone* court concluded, the "undisputed fact that [the seven employees at issue] had all been appointed as officers by the Board should have been sufficient to establish their officer status as a matter of legal interpretation." *Id*.

While understandable given the messy state of case law on this topic, this Court concludes that the Bankruptcy Court erred by inquiring beyond the fact that the six employees

12

were appointed by LSC's board. Even if the Court were to adopt a more expansive analysis, the fact that the six employees were appointed by the board and would be deemed officers under Delaware corporate law would weigh heavily in concluding that the employees are officers for Bankruptcy Code purposes. That is dispositive, at least absent a strong showing that they do not perform any significant role in management.

The Bankruptcy Court cited a chart provided by LSC listing various attributes of each of the KERP employees to show that "the only thing that really stands in [the six employees'] way of being included in the KERP is their title." (App. at 288.) The chart at issue asserts baldly — with no context or detail — that the six employees lack discretionary control over the budget, do not dictate company policy, cannot dictate the disposition of corporate assets, and do not report directly to the board or present regularly at board meetings. (App. at 246.) But such abilities are more akin to those of the board of directors, which, in managing the corporation, has "the duty to establish or approve the long-term strategic, financial and organizational goals of the corporation; to approve formal or informal plans for the achievement of these goals; to monitor corporate performance; and to act, when in the good faith, informed judgment of the board it is appropriate to act." R. Franklin Balotti et al., Delaware Law of Corporations and Business Organizations, § 4.10 (quotation marks and citation omitted). Officers, meanwhile, run the corporation "on a day-to-day-basis," including both "purely ministerial" duties and any responsibilities delegated by the board of directors. *Id*. Just because the employees do not possess the attributes set forth by LSC does not mean they are not officers.

The Bankruptcy Court's conclusion that the employees are not officers because they do not meet the broad criteria on LSC's chart is also incorrect. LSC provided only a negative description of the employees' job descriptions: certain limits on the abilities of each of the

13

employees. (App. at 240–42.) But without more detail about the six employees' *affirmative* job duties, LSC failed to overcome the strong presumption that, as board-appointed employees, the six employees are officers.

In sum, Bankruptcy Court erred by analyzing whether the six employees were statutory officers largely under a functional "control" test, instead of giving the considerable weight due to the employees' board appointment and resulting officer status under Delaware law.[3] Since the employees are officers under the Bankruptcy Code, they are statutory insiders ineligible to receive KERP payments.

## IV. Conclusion

For the foregoing reasons, the Bankruptcy Court's order approving the KERP is reversed as to the six employees at issue. The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: July 9, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[3] While this case presents a mixed question of law and fact, the issue determined by this Court — what test courts use to determine if employees appointed by the board are officers — is primarily legal. As such, this Court reverses on *de novo* review. *In re Bayshore Wire Prods. Corp.*, 209 F.3d at 103. Were this question considered primarily factual, this Court would find clearly erroneous the Bankruptcy Court's conclusion that the six employees were not officers in light of the combined facts of board appointment, title, state law treatment, and the absence of any showing that they do not perform any significant managerial role. *See Fieldstone*, 2008 WL 4826291 at *5 n.17.

14